If it pleases the Court, my name is Michael Ware along with Adrian Sachi at Council Table. We represent Andon, LLC and Reconciling People Together in Faith Ministries. We're here on our petition today primarily because of the 12B6 motion that was sustained by Judge Dumas. We believe that at that stage of the game we had set forth a cause of action that was recognizable in RUPLA and I'm sure the Court has read the transcript with regard to the engagement of conversation and dialogue with the Judge, at which time he went on to what a variance would do and then went on to other factual determinations that we didn't believe was properly before the Court at the time. The Court sustained the 12B6 and in our beliefs we were relying upon the fact that we had put forth a cause of action and the Court in that particular matter said that because of the Twombly case and the Iqbal case that it did not believe we had set forth factual backup with regard to our allegations. The reason it kind of is troubling to us in that particular matter is you also have Rule 8A2 which says that basically it's a notice pleading. I don't think the City was ever in jeopardy of not knowing what we pled with regard to this case. Now clearly there are other facts that we could have alleged that were maybe putting more bones on it, but I think if you review our complaint in this particular matter, we went so far as to point out cases and cite them in the complaint so that it gave a basis for what we were alleging, why we were alleging it, and how we believed that it was complementary to our case. Yes, ma'am. Can I ask you then, so what rule are you proposing for when denial of a variance that would allow for operation of a church would constitute a substantial burden? Is it whenever a variance is denied? No, Your Honor. So what is the rule that you were proposing? Well, what I'm proposing, Judge, is what was set forth in Bethel, and if I may, Judge, it sets forth many things that the Court takes into consideration, primarily of which is I think our focus in this particular case, had we had the opportunity to put on the case and try the case, is that you can have a neutral regulation or ordinance or a non-neutral one, but in the case of Bethel, the Court speaks to the fact that you can have a variance or an ordinance that requires certain aspects of a particular obligation to meet the zoning requirement. But the ordinance here was neutral in its terms, was it not? I mean... It was neutral insofar as... But I mean, would it apply to a YMCA or a community center? It would apply to a community center. So it's not just aimed at churches? It is not just aimed at churches. But here's the problem, Judge. If you take the factual situation here, and we asked Judge Dumas if he did not believe that we had adequately pled this particular case to give us leave to amend. We had basic information that we believe would go further. But let me give you an example that fits right in to what Judge Harris is asking. In this particular case, this particular property is small, very small. The church that is proposed for there went to the neighborhood and engaged everybody to make sure they could go in there. As it stands under commercial zoning, commercial zoning, you could put a 7-11 there, you could put anything there that's open 24 hours a day, high traffic. But the opposing counsel makes the point that all of these surrounding neighborhoods have covenants that run with the land. And so you could have somebody, you know, have maybe the present neighbor saying something, but they can sell the property, and it's something... If I may continue. All I'm saying is, as it stands as commercial, you have that particular opportunity. When you take the church, which has now been strapped into a collective in the ordinance, a collective of elk lodges, assembly... Let me ask you this. Normally when one applies for a zoning variance, and you get a sense from the planning commission, or the zoning board of appeals or something, that it isn't going to apply, that the variance may be denied. Normally you try to submit plans that would mitigate the problems, and then sometimes the second and third time around you get the variance approved. But it's a dialogic process where government and the zoning authorities and the proposed development go back and forth, and you try to meet the zoning board's reservations. Did you submit plans that would mitigate the difficulties that were found here in terms of whether there was an adequate degree of separation from residential structures and everything? There was dialogue, Judge. There was dialogue with regard to that. No, but were there actually... Did you try to submit a mitigating plan? Well, yeah. We spoke of the fact that they would only be operating on Wednesday evenings. What? We spoke of the fact that they'd only be operating on Wednesday evenings. On certain times on Sunday they would limit the number of cars. The fact that there is a governmental ditch that separates the residential on the other side zoning such that you have a massive drainage ditch, which is not a small... I mean, we're talking about 12 or 14 foot in breadth. But if I may go back, that dialogue was engaged. If you recall from our complaint, when the initial contact was made with the city's officials, it was, no, it's not going to happen. Our argument, Judge, is if you take the church and bundle it in that particular zoning ordinance that includes moose lodges, public swimming pools, parks and all those kinds of things and require that 100 foot buffer, then it in and of itself restricts the ability for a church to go into any residential area, which if it was an orthodox synagogue... But what limiting principle is there to your argument? I mean, if we were to say that... I mean, for all I know, this looks like, to me, a reasonable sort of garden variety zoning restriction. It doesn't seem to me to be something out of the ordinary. It says no property or structure is located within 100 feet of any side or rear property. Well, those kind of things are, I mean, they're very ordinary. Now, if we were to say that this kind of zoning ordinance imposes a facially reasonable... You find this kind of zoning ordinance in municipalities across the country. And if we were to say that a facially reasonable zoning ordinance of this type imposed substantial burdens, what limiting principle is there to that? Why would not any number of reasonable ordinances impose substantial burdens? And what criteria are we to use as to what is a reasonable zoning restriction and what is not? I mean, is 100 feet reasonable and 75 feet reasonable and 100 not? Is 50 reasonable and 75 not? I just... I don't get it. Because in Bethel, we had a very different situation where the zoning was changed while the church was under construction. So there was a significant reliance interest there. And that's not what... This is very different because there haven't been any expenses made. It's all... Everybody's plans were contingent upon approval of the zoning variance. And the church is a potential lessor, a potential lessee. That's correct. It's not the owner of the property. Andan is the owner of the property. So what I'm worried about is if we say in the case... In a contingent case where you have a potential lessee and you have a fairly ordinary zoning restriction and you don't have the factors that you have in Bethel where there was zoning changes that impeded construction and where the zoning law has been in place in this case since 1997. And Mr. Andan didn't even buy the property until 2011. And so you can't say that there's been some sort of ambush here. The zoning ordinance was in place 14 years before the purchase was made. So if we say you may be right here, what is the limiting principle? I mean, do we just take over the state court zoning function under the rubric of reasonableness and say, well, yeah, 100 feet's okay, 75 feet's not, 100 is. I mean, I just don't understand what the criteria are. If I may, Judge, please not focus on the 100 feet in the broad spectrum as you're speaking because I can understand that. If you fall back on RUPLA and what RUPLA tells us, it says that no government shall impose unless the government demonstrates that imposition of the burden on the person or assembly is in the furtherance of a compelling governmental interest, is the least restrictive means of furthering that governmental interest. So you're saying it's not that we have to decide whether 100 feet or 75 feet is reasonable. We'd have to decide whether they advance a compelling interest. I'm not sure that makes it better. Well, I do think it makes it better. Really? Here's the reason I do. If you look at the City of Newport News and you apply this 100 foot to a church and you make that barrier in there because they are an assembly of people, it basically restricts the use of commercial because a lot of commercial backs up to residential and it restricts the use of residential because residential already has 10 and 12 foot sideline buffers. We're saying the ordinance as a whole is problematic because you've bundled churches into these areas that you want to have. Now, the governmental interest they're saying here is they don't. Before we even get to the interest thing, though, I'm still on substantial burden and what kind of criteria we apply to figure out when is a religious organization substantially burdened by denial of a lease, a variance, what would allow that organization to run worship services in a particular place. Is your answer whenever that happens, look, the religious organization wants that building. If they can't have it, that's a substantial burden. No, ma'am. I mean, that's not illogical, but I'm just trying to figure out is there any stopping point. And I see my time's run out, but if I may respond. Please. Go ahead and answer the question, please. Yes. The way I see it is that if we had had the opportunity to put forth the case in this particular matter, I think we would have been able to demonstrate that the ordinance as a whole is flawed. Okay. But in that regard. Excuse me. Judge Keenan has a question. Oh, I'm sorry, Judge Keenan. I'm sorry. I didn't mean to cut you off. No, ma'am. I'm sorry. No, I thought you were winding up there. I apologize. You know, the difficulty I'm having with your position in the concept of limiting principles is the concept in zoning law of a self-imposed hardship. And clearly in Bethel, the hardship they did not impose upon themselves. They undertook to develop the property prior to the change in the ordinance. And here you've got a self-imposed hardship. So how does the self-imposition of the hardship, you entered into this contract knowing the law was against you, how does that then come into the mix in a RLUIPA claim? It comes into the mix in this particular case. The landlord. Are you saying it makes no difference that it was a self-imposed hardship? Yes. I think in this particular case the landlord acquired the property with the expectation of he likes churches, fully expecting that maybe he would get the variance. RUPLA tells us that the government is supposed to make concessions with regard to the least impositions to make it work. But you're asking for a variance here. And, you know, at some point, I mean, all zoning law is an accommodation, okay? It's an accommodation between the needs of the developer or the property owner and the needs of the area as a whole, the city as a whole, and the surrounding neighborhoods. And the point is made that the churches, as wonderful as they are, are still hosts to rather large functions, services and weddings and church groups and rehearsals and this and that, and there can be a constant stream of traffic even though these activities are so wonderful and highly respected and sustaining in their own right. But they still bump up against the needs of the community. They could still bump up against the needs of the community as a whole. And the problem I see is that we're just making ourselves into a super zoning board if we adopt the position because I just don't see... We'd be sorting through innumerable ordinances with innumerable provisions and saying, well, this might be a reasonable ordinance in some cases, but no, it really sort of imposes a substantial burden. And, you know, it seems to me that Bethel is a perfect case for the reasons that Judge Keenan just articulated, and that is that the people in Bethel got caught in the middle. They got hijacked. But here, everybody had notice. As Judge Keenan pointed out, the property owner had notice of what the zoning restrictions were when that property was bought. And the people who signed the contract for the contingent lease had notice of what the zoning restriction was because the lease was contingent upon the variance. And so, again, to just borrow Judge Keenan's words, there's got to be a difference in this whole area of law between what she describes as a self-imposed hardship and something where the authorities are jerking people around. And I agree with you 100% from the standpoint of self-imposed. The only thing I'm saying is the reason that the pastor in this particular aspect could not find a location in the city of Newport News is because of the fact the zoning ordinance bundles the church in an entity that has more safeguards necessary than a church does. Can I just say something quickly? So I think you may have just answered my question. So you're saying that the denial of a variance is a substantial burden because there's nowhere else in town where this church can operate? I'm saying that the ordinance as drafted. Because that would be an answer. I'm saying the ordinance as drafted so restricts the ability of a church, a new church, to go in. It's not grandfathered in a residential section. It cannot go in a commercial section because the 100 foot is imposed upon the church as if it was a moose lodge or anything else. The ordinance itself is what I'm saying is violative of root blood from our standpoint. Unfortunately, we didn't. We've got 144 pages that represents our complete case. Judge Dumar took the case away, did not allow us to develop it, or better yet replete it so that we could show these are some of the greater concerns we have. So your argument is that it's a substantial burden because there's no way for a new church without a grandfathered lease, and I gather a small church can't afford a big property to locate anywhere in Newport News. I believe that to be a great difficulty, and that's what it would show because of the way the ordinance is drafted. Go ahead. I'm sorry. No, no, go ahead. I was going to say we didn't plead all that because we believe that it was incumbent upon us before we researched the root blood aspects of it to make the introduction to the city, to go to the neighborhood to address, quote, the concern of what the regulation was, i.e., the neighborhood, protecting the neighborhood, and if you've got the acquiescence of the neighborhood saying, I prefer to have a church there than a 7-Eleven or a spice shop any day of the week, and you have that all addressed and you go to the city and then you have the denials, then you leave us with the ordinance that is problematic instead of trying to work within the ordinance. And I know I've gone way over, and I appreciate it. And if you have any further questions. The function of whether other places are available in town or not, that wouldn't be a burden imposed by the zoning ordinance. It would if it's 100-foot. That's a burden imposed by the housing market, isn't it? No. I think this is a commercial property as well. But what that means, what that would mean is that in certain types of jurisdictions, such as, let's say, a high-density area, it's probably going to be less likely that you'll be able to find another place in town. But that can't mean that the zoning ordinance is simply tossed out or becomes unreasonable because the zoning ordinance is put in there with a recognition that the community may be one where there's a high-density population. If you have a community with lots and lots of townhouses and houses close together, the zoning ordinance reflects that high density and protects it against it being even higher density. We can't just toss out the zoning ordinance on the grounds that, well, these people all live close together, and so it would be difficult for a church to locate elsewhere. Therefore, this is a substantial burden because that starts to treat suburban communities and high-density inner-city communities very differently in terms of the encroachment on the neighborhoods or, in fact, communities with townhouses that are relatively near large metropolitan areas. And that's my problem is to have it depend on the real estate market gets into some differential treatment. And I'm not saying this is, as you were speaking earlier about the legislators drafting it, the draft here is in the furtherance of the government compelling interest, and that's what they're looking at to make sure the government's compelling interest. If this was a parking issue or such as that so that we wouldn't have people parking on the yards, curbs, and all that, that's one thing. But when you have – let me give you an example of what I could see with the zoning ordinance. If an Orthodox Jewish community has a church in the whole neighborhood, the church burns down because of financial reasons they can't rebuild in two years. Their grandfathering for that particular property is gone. Orthodox have to walk to shul on their Sabbath. They can't drive. So then, because of this 100-foot restriction, they cannot rebuild in any parts of that area, even if it's commercial or residential. So it's – RUPLA would come into play. That is my belief with regard to basically an oversimplification of this case. Thank you, sir. I understand I used all my RUPLA, I'm sure. Thank you. Ms. Bradbury. Your Honor, it's a pleasure to be here today. My name is Darlene Bradbury, and I'm here on behalf of the City of Newport News. I'm the Deputy City Attorney with the City Attorney's Office. And I'd like to address straight off the bat some things that were argued by my opposing counsel. This property is only about a third of an acre. It's a relatively small property. And all that's being asked is that there be a 100-foot buffer between the sides that front with residential properties. And as the court has pointed out, the church has lost no money because there was – this lease was made contingent upon the city's approval of the variance. And so they never paid out any rent to lease this property. And the court is asking, well, what is substantial? And the answer is, not this, certainly as a matter of law. And that's why the court was correct in granting the 12b-6 motion. Does it make a difference that this was dismissed under 12b-6 as opposed to going to summary judgment? Or does that not make a difference in your view? It doesn't make any difference because there is no way to allege a cause of action under the facts. There is no embellishment of the facts that could have changed the outcome of this as under the existing law. So it does not matter. And one of the cases that is cited in the city's brief is the Primera Iglesia case. And in that case, there was imposed upon a church a 1,000-foot buffer. And the court – it was the district court – the case – that portion was not appealed up to the circuit court level, but the circuit court went to – went through the findings and the facts. And in that case, a 1,000-foot buffer was not found to be substantial. Here, it's a mere 100-foot buffer. And churches are allowed, as a matter of right, under this – under its current zoning, its C-1 retail commercial. The only problem is there's not enough space between the building and the residential property lines. And if there had been enough space, if the property were just a little bit bigger, we wouldn't be here today. Because – Counsel, can I just ask you? It doesn't seem like the – whether the burden imposed on the church is substantial is going to turn on the amount of the setback, right? It's going to turn on does application of this law in this instance sort of prevent the church from, you know, getting together for communal worship, which is clearly a religious exercise. So I guess I don't really understand why we're talking about the, you know, the number of feet involved. Isn't the question, you know, is the application of the law in this case to this particular church preventing it from coming together for communal worship or not? And I sort of understand that they are saying, yes, it does, because we can't find anywhere else to do it. My response would be yes, yes, and let's talk about that. Okay, good. Let's talk about it. Yes, because, you know, is 100 feet the issue here? And the case law has said that, you know, these run-of-the-mill zoning requirements do not constitute a substantial burden. So to say this is only 100 feet under any circumstances, there's – are there any circumstances in your view in which a zoning ordinance might constitute a substantial burden? And if not, why do we have RLUIPA? I mean, clearly the drafters of RLUIPA contemplated that some applications of zoning ordinances would create a substantial burden. Right. Well, you have to look and see whether there's a substantial burden. But the cases have said that churches cannot exempt themselves from, you know, run-of-the-mill zoning requirements, and this is just a run-of-the-mill zoning requirement. I don't understand. If there was a run-of-the-mill zoning requirement in Newport News that said no religious worship, in Newport News, I think we would all agree that would be a substantial burden. I just – I'm not – right? I totally agree with you. Some applications of zoning ordinances clearly will not create substantial burdens. There's no per se exemption, but some will. And all I'm asking for is some guidance as to which ones do and which ones don't. Yes, and there is clarification. I wasn't fully describing the law when it says run-of-the-mill zoning, but it's pertaining to things like this, buffers and setbacks and that sort of thing. So there are no circumstances under which a buffer or setback zoning ordinance could constitute a substantial burden on religious activity? There – Because then I don't understand why we have RLUBA. There is no case of which I'm aware where a mere buffer has been held to be a substantial burden. Why not, in your view, is the point of having a law that says when zoning applications substantially burden religious activity, there needs to be a compelling interest. Why have it if, in fact, the underlying premise is that zoning ordinances per se do not constitute a substantial burden? Well, the example would be the Bethel case that this Court has decided. And in that case, the locality imposed zoning ordinance after zoning ordinance after zoning ordinance. And this Court said that in that case, the church bought a property where it had the reasonable expectation that it would be able to build a church. And because of the process taking so long and the subsequent zoning ordinance, the church was not able to be built at all. They finally – So is that the answer when it imposes a substantial burden when it makes it impossible for a church or a religious organization to locate at all within some kind of entity, township, county? That is what this Court said in Bethel. Okay, that's all I'm asking. What's the answer? Yes. It's an interesting question, but isn't a part of the answer have to be that the zoning ordinances are framed neutrally? In other words, one of the things is you can't have a zoning ordinance that appears aimed at religious organizations. And what you want to worry about, for example, are people manipulating these laws to keep a mosque or an unpopular religious faith out of the community just because its religious tenets happen to be unpopular with the surrounding neighborhoods. And sometimes the zoning authorities gain in shenanigans. But part of the response, it seems to me, is that where the zoning ordinance has been in place since 1997, it hasn't been thrown in at the last minute. It hasn't been changed while the place of worship was under construction. It applies to community centers, to YMCA, as well as it would to a church. Part of the answer has to be that where it's been on the books a long time and where it's neutral in its application and where it's clearly not directed at churches as a group or a particular faith because the surrounding neighbors just have religious prejudice against the faith, then the question is if even that zoning ordinance is a substantial burden, what would not be? And so it is the case that sometimes zoning ordinances are going to pose a substantial burden. I don't think you have to have a per se rule, but if something as ordinary and plain vanilla as this ordinance is thought to be a substantial burden, I don't understand what the limiting principle is. It seems to me we're just off to essentially overtaking the role of local authorities in zoning, which historically has been a state and local function. That's incorrect, Your Honor. Well, Counselor, can I just follow up on that? And I'm sorry. I really am trying to make sense of this statute just as a matter of text. So there's one provision that prevents discrimination against religious groups. No government shall impose or implement a land use regulation that discriminates on the basis of religion. So that covers the ones, maybe like Bethel, where it looks like they're after a particular religion, they're manipulating zoning regulations to keep one particular church or religion out. That's already covered. But then there's a whole other provision that says no government in addition to that, no discriminating, but on top of that, you still can't impose even a neutral land use regulation in a manner that imposes a substantial burden. I totally share the concern that if the answer is whenever a religious body can't rent their first choice property, that's a substantial burden, then there is no stopping point. But I guess I'm asking you, in order to agree with you, let me put it this way, in order to agree with you, do I have to agree that a neutral, non-manipulated land use regulation can never constitute a substantial burden? Because I'm having trouble reconciling that with the statute. Is there some more limiting principle I could use to agree with you? No, Your Honor. The limiting principle is in the word substantial. The Bethel case was not decided under this equal terms provision. It was decided under the substantial burden. That's the part that we cite, most notably the footnote 4 in that opinion. So, no, you don't have to agree with me. But we do have some guidelines as to what is and what isn't substantial. And the courts have said you can't eliminate that word from the statute. It's got to have some meaning. So it can't just be just any burden. It's got to be a substantial burden. And the cases have indicated, the club case out of Chicago that is cited, that just time and money of locating within an urban setting is not a substantial burden. And it's incorrect, actually, to say that this church was unable to find any location within the city of Newport News. And I would point them, I would point the court to the joint appendix at Pastor Terry's affidavit. And what he says on page 31 is that before signing this lease, he looked at other locations but could not find a location that was the appropriate size, location, and price. Many of the buildings were too large and too expensive for a young congregation. So it's not that there weren't properties available. It's just it basically comes down to, you know, size and cost go together. And in the end, they really couldn't afford to buy a location that was or rent a location that was suitable for a church. And so the case law has said that just because you can't afford it doesn't mean there's a substantial burden. And I would point the court back to its own case law, and the court says that in the land use context, a plaintiff can succeed on a substantial burden claim by establishing that a government regulation puts substantial pressure on it to modify its behavior. It's the Midrash-Shapardi v. Surfside case out of the 11th Circuit where they said that churches don't get a free pass from run-of-the-mill zoning requirements such as size, community with existing uses, and the availability of parking. So those are just sort of run-of-the-mill type things that aren't necessarily a substantial burden. But specifically is where the court said in footnote 4, where a church buys a property reasonably expecting to build a church, government action impeding the building of that church may impose a substantial burden because the delay, uncertainty, and expense of selling the current property and finding a new one are themselves burdensome. This is not to say that a religious organization can state a reluctant substantial burden claim simply by alleging that it received an adverse land use ruling. Certainly, Congress did not intend to permit religious organizations to exempt themselves from neutral zoning provisions. Thus, a court will likely find that a religious organization has not pled, and that word is very important, a religious organization has not pled a substantial burden claim merely by alleging that it moved to an area in which generally applicable zoning provisions bar construction of churches and then was denied exemption from the zoning provisions to build its church. And that is exactly the point that Judge Wilkinson was getting at, is that here both the owner and the church self-imposed this restriction upon themselves. So it matters that this is a prospective lease contingent upon a zoning inspection? Yes, sir. A zoning exception? Yes, sir. It does matter in this case on these facts. And that the church self-imposed, the church and the owner self-imposed this limitation, they created their own hardship because they never had any reasonable expectation that this property would be available for use as a church. And the fact that they entered into a lease contingent upon city approval acknowledges that, frankly. I totally understand what you're saying. This does answer my question about what counts as a substantial burden, or at least what doesn't count as a substantial burden. Let me frame the case for you in the way I think is, I'm just being devil's advocate here, just the most sympathetic way I could possibly frame it for the claimant, which would be it is true that RLUIPA was not intended to give religious organizations sort of an automatic exemption. But it was intended to cover cases arguably like this one, where a religion is a minority religion, a newly established religion, a young religion, and even neutral land use regulations sort of inadvertently have kind of a disparate impact on those minority religions because they are not entitled to the grandfathering that older and better established religious groups have. They're small, they're young, they don't have much money. And so what appears to be and was intended as an entirely kind of run-of-the-mill garden variety zoning ordinance has the unfortunate effect of driving those younger, newer minority religions out of town while allowing older, more established religions to remain. And that that actually was the kind of thing RLUIPA was concerned about. So if I were trying to make the absolute best case for the claimants here, that's what I'd be arguing. And what's your response to that? A situation like that, had it been pled here, might that constitute a substantial burden or no? No, because the cases have indicated that we are all subject to market conditions. So there is always going to be a cost to square footage and land, and that churches are no different, and that all they're talking about is the burdens created by market conditions. That's not a RLUIPA claim. And that, again, is the Club versus Chicago case decided by the Seventh Circuit, but cited by this circuit with approval where they indicated that time and money expenditures do not equate to substantial burden. I mean, I read that case, but I don't believe there was any allegation that sort of the laws would have this kind of systematic effect where they would inadvertently have a disparate impact on minority, less well-established religious groups and drive just those religions out of town. Well, really, if the facts are, as I understand that the court is saying, it's really a matter of money, because what you're saying is this is a new church, it's a small church. The loss of the grandfathering. Yes. And they're trying to find a location, and it's really just a matter of expense. Can they afford to find a place within the city of Newport News? And just as this pastor said, there were properties available. He looked at them, but they were just too large and too expensive. And so it's just a matter of market conditions to which we are all subject. The district court said, you know, I would have liked a bigger house when I was younger, but I just couldn't afford it. That's just the product of real estate and the market conditions. Maybe a smaller church and a poorer church would have a better chance of meeting the setback and buffer requirements, whereas a very well-to-do, established religion, I know that I don't think that, I mean, some of the churches today, in a very wealthy church, they're going to establish quite a cathedral, and it's going to be more difficult to convince zoning authorities that parking problems and services and the number of congregants attending, it will probably be, it could well be easier for a smaller church to make the case that its presence would be less disruptive. Yes, that may be correct, Your Honor. I mean, the point, and I think it's a good one, because I'm sometimes drawn to narrow rulings, but the point that Judge Harris is making is that we don't need to pursue this case in terms of global pronouncements. We can actually take into account the different facts before us, including the fact that this is, that the church has been put on notice, the owner of the property has been put on notice, the case is a lease, nobody spent any money, it's a prospective lease, it's a contingent lease. Those, you know, that matters. Yes, Your Honor, I would submit to the Court that the Bethel case is all this Court needs, especially footnote four, where that panel seemed to forecast exactly the issue that was in this case, except what they said wouldn't even meet the pleading requirements for a substantial burden. Here, the burden is even less substantial, if you will, because there is no money that has been spent and, you know, no time to try to reshape the building or work with the city. That's just not before us. The matter was, can we convert basically an office use into a church? And the response is the size of the property just doesn't have what is necessary to have the buffer requirement. Do you have anything further? No, Your Honor. Hold on a minute. No, thank you. Are you sure you've been able to get out and have all your questions? Oh, yes, yes, yes. Okay, thanks. Thank you, Your Honor. Mr. Weyer. Thank you. You've been so kind to me, I will try to be brief. The one thing that counsel and I both agree is that I think Bethel brings a lot to the table. And if you listen to what they say, of course, we recognize that when a plaintiff challenges an apparently neutral law of general applicability as volatile to the First Amendment, it must demonstrate that the statute targets its religious beliefs or practices. The court goes on further and says, accordingly, a religious organization asserting that a land use regulation has imposed a substantial burden on its religious exercise need not show that the land regulation targeted it. And if you go back to one of the original statements for Rufalo, and I'm quoting, the right to build, buy, or rent space is an indispensable adjunct of the core First Amendment right to assemble for religious purposes. Churches in general and new, small, or unfamiliar churches in particular are frequently discriminated against on the face of zoning codes and also in the highly individualized and discretionary process of land use regulation. Zoning codes frequently exclude churches in places where they permit the... What's discretionary about this? I mean, the only question is discretionary is a variance. It's not discretionary as to whether something applies or not. Well, Judge, in this particular case, if you took Rufalo into play, okay, and it says that the government should basically try to accommodate the churches, taking into consideration the public interest that they have. In this particular case, there's not a parking issue. You know, 100 feet is not a big distance. I mean, is opposing counsel correct that a 1,000-feet buffer zone has been held to be reasonable, not that we need to get into it? I don't know that it was found to be reasonable. What I'm saying is have courts approved buffer zones of 1,000 feet? I think courts have approved a lot of things, and that's why I think it's a fact. In that particular case, I don't recall the distance. I do know that there's... Well, sir, you have no reason to believe that the assertion was incorrect. No, sir. I would never challenge counsel. That 1,000 feet, several courts, she said 1,000 feet did not contravene the statute or impose a substantial burden because what I'm saying is 100 feet is not a lot. It depends on from where to where. Well... If it's from 100 foot from the back of the church to the adjoining house, that's one thing. If it's 100 foot from the back of the church to the property line of the residential, that's a difference. There are a lot of people, a lot of homes, houses, everything, that don't want an establishment coming within 100 feet of them. But my point, Judge, is if RUPLA says that they should accommodate them, as long as their governmental interest is protected, the governmental interest here is the separation between the residential and the commercial. We've addressed those issues by going to the neighborhood and getting that. Now, also, let me submit, if I were to have the landlord in this particular case acquire the residential property immediately behind him so as to do away with this buffer, it still does nothing because that is still zoned residential and the front piece is still zoned commercial. I think we've, counsel and I have both given you all a good indication. I think what we have is a neutral zoning ordinance, which has more ramifications than they intended because they bundled it in an organizational meeting spot, which they were looking to prevent the Moose Lodge, the bingo parlors, and everything else from backing up to a residential community. In this particular case, this property is uniquely situated because the rezoning that went through in the city that changed all the zoning in that area has now pinched this property into a commercial zone, and it can be used for anything commercial that would be more volatile to the community than a church that has a very small parish to it. So with that, Judge, I would submit that I think we've made all our points. I appreciate your consideration of my arguments today, and thank you for your time. We thank you, Mr. Weyer. We will adjourn court and come down and thank our courtroom deputy for her good help, and we will adjourn court and come down and recounsel. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, Barbara Milano Keenan, Pamela A. Harris